

**IT IS SO ORDERED.**
**Signed November 6, 2014**

Arthur S. Weissbrodt
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>WILLIE JOHN RILEY,<br>　　　　　Debtor. | Case No. 13-52521-ASW<br>Chapter 13 |
| WILLIE JOHN RILEY,<br>　　　　　Plaintiff,<br>v.<br>RONALD A. MACKIN, JOAN M. MACKIN,<br>JOHN P. MCDONNELL,<br>　　　　　Defendants. | Adv. Pro. No. 13-05116-ASW |

**MEMORANDUM DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is the motion of Defendant John P. McDonnell ("McDonnell") for summary judgment of dismissal of the claims against McDonnell. McDonnell appears pro se; Plaintiff is represented by attorney Steven Miyake.

The Court previously issued a Partial Tentative Decision, and requested supplemental briefing. McDonnell filed a supplemental brief; Plaintiff did not. For the reasons explained below, McDonnell's motion is granted in part and denied in part.

**I. FACTS**

Plaintiff retained McDonnell, an attorney, in June 2004 for legal advice regarding a dispute with Plaintiff's former girlfriend, Deborah McDonald, over a house in San Juan Bautista. Plaintiff had defaulted on a settlement of litigation with Ms. McDonald, and Plaintiff was facing entry of a default judgment on the settlement and eviction from the home. After the initial meeting, Plaintiff decided to file a bankruptcy proceeding with a different attorney. After Plaintiff dismissed his bankruptcy proceeding, Plaintiff again consulted with McDonnell at various times, and during 2004 and 2005 retained McDonnell to represent him in connection with various disputes: litigation with Ms. McDonald regarding the San Juan Bautista property; the filing of a lawsuit against Ms. McDonald for misappropriation of trade secrets (the trade secret case); and actions against two of Plaintiff's former attorneys. No written fee agreement was entered into between Plaintiff and McDonnell.

By the end of 2006, Plaintiff owed McDonnell approximately $104,000 in legal fees. On December 28, 2006, McDonnell sent Plaintiff an e-mail regarding pending matters. In discussing the upcoming trade secret case, McDonnell wrote:

> This case is mainly a waste of time and money. You had some business information [Ms. McDonald] stole, but due to her incompetence, she has not been able to take much, if any, business from you, so damages are almost non-existent. We can try a case to a jury or a judge. A judge might toss the case completely, finding that the business information does not meet the level of a trade secret. If he found our way on that issue, he would not give you enough money to justify the case. A jury is worse. A jury trial will cost 3 times what a court trial costs. The jury would lean your way on protecting your business, but still see no real money damages. Mainly, they would be ticked off that they are forced to sit through a trial that they will see as a "lovers' quarrel"

> that you are pushing out of spite, not out of big
> damages. In either event, you will spend much more money
> on the trial than you could expect to get back. You could
> even lose and pay DM's costs (a few thousand).

Exhibit C to McDonnell declaration.

In reply, Plaintiff thanked McDonnell for the analysis of the case and promised to try to make payments. McDonnell states in his declaration that in February 2007, Plaintiff proposed that to provide security for the unpaid fees, Plaintiff would give McDonnell a lien on Plaintiff's home in San Jose. As discussed below, Plaintiff implicitly disputes this fact. McDonnell also states in his declaration that he verbally advised Plaintiff of the rules concerning dealings between an attorney and client, and then followed up with an email on February 21, 2007, advising Plaintiff in writing of the potential conflict in any dealing between an attorney and client and advising Plaintiff that he should consult with an independent attorney on the matter. (Exhibit F to McDonnell declaration.)

On March 5, 2007, Plaintiff came to McDonnell's office and signed a promissory note for $125,000 (the "Note") and a deed of trust ("Deed of Trust") encumbering Plaintiff's real property at 3604 Cobbert Street, San Jose, CA (Exhibit H to McDonnell declaration). The Note contains the following paragraph:

> I certify that prior to signing this Note and the Deed of
> Trust, I have been advised by attorney John P. McDonnell
> that I should discuss this transaction and the documents
> with an independent attorney of my own choosing, and I
> have had an opportunity to do so.

The recorder's office did not accept the format of the notarization of the Deed of Trust, so Plaintiff returned to McDonnell's office on March 28, 2007 and executed the Deed of Trust a second time; the Deed of Trust was recorded on May 3, 2007.

Plaintiff's complaint alleges that at the March 5, 2007 meeting, McDonnell made the following representations: (a) Plaintiff was winning the trade secret case; (b) McDonnell needed more money to continue representing plaintiff; (c) Plaintiff had to sign the promissory note and deed of trust to reassure McDonnell that payment of his fees would continue to be made; (d) if Plaintiff did not sign the promissory note and deed of trust, McDonnell would withdraw from the case; (e) with McDonnell as Plaintiff's attorney, Plaintiff would win the case and be able to collect all of his attorneys fees from the defendant in the Santa Clara state court action; (f) if McDonnell withdrew as Plaintiff's attorney, the other side would construe this withdrawal as weakness, there would be no way Plaintiff could win at trial, and Plaintiff's chances of recovering the property and his attorneys fees would be nullified.

In his declaration in support of the opposition to McDonnell's motion for summary judgment, Plaintiff states, for the first time, that during the March 5, 2007 meeting, McDonnell told Plaintiff that McDonnell would never take Plaintiff's house. Plaintiff states in that declaration that he was put under inordinate pressure from McDonnell to sign the documents, that Plaintiff expressed reservations to McDonnell about granting the deed of trust, and that Plaintiff told McDonnell that Plaintiff would sign the deed of trust only if the parties understood that "this is not part of the deal." According to Plaintiff, McDonnell reassured Plaintiff that McDonnell would never take the house.

Two days after the initial signing of the Note and Deed of Trust, on March 7, 2007, Plaintiff and McDonnell attended a

4

mandatory settlement conference in the trade secret case. At that conference, Plaintiff agreed to settle the case by accepting a payment of $9,500 from Ms. McDonald. The parties promptly signed a standard settlement agreement and Ms. McDonald paid the $9,500. When that money was received, Plaintiff sent McDonnell an e-mail stating that the $9,500 could be used to pay down a portion of the outstanding amount due to McDonnell. It is not clear from the record whether this was done.

McDonnell continued to work on Plaintiff's cases throughout 2008 and into 2009. According to McDonnell's unrebutted declaration, by the end of 2009 the amount of unpaid legal fees totaled over $210,000. In February 2009, McDonnell sent Plaintiff an e-mail explaining that McDonnell could not keep going on without payment. McDonnell also sent Plaintiff a formal Notice of Client's Right to Arbitrate a Fee Dispute. Plaintiff acknowledged receiving the Notice. On July 22, 2009, McDonnell sent Plaintiff an e-mail "calling" the loan. That e-mail stated:

> I have no choice but to call the loan. When we did this in March 2007, we expected to get the bill handled in 6 months or so. We are now over 2 years out, and I can't go any further. Please immediately look into what you can do to refinance your place on Cobbert and get my loan paid off.

Exhibit K to McDonnell declaration.

In 2010, over Plaintiff's objections, McDonnell withdrew from representing Plaintiff. Plaintiff obtained his files from McDonnell and consulted with a new attorney, Marc Eisenhart. In September 2010 Mr. Eisenhart requested the lien documents on the home and all the bills McDonnell had sent Plaintiff. McDonnell provided these to attorney Eisenhart and did not hear anything further.

In September 2010, McDonnell sold the Note and the Deed of Trust to The Playforge LLC for $140,000. In October 2010, Playforge recorded the first Notice of Default. In November 2012 (after Playforge was owned by Saban Brands), Playforge recorded another Notice of Default. Eventually Playforge set a Trustee's Sale for May 10, 2013. Plaintiff filed the instant bankruptcy on May 8, 2013. After that, Playforge sold the Note and Deed of Trust to the Mackin Trust for $140,000. This adversary proceeding was filed on August 13, 2013. McDonnell filed an adversary proceeding (no. 13-5118) against Plaintiff on August 22, 2013 seeking a declaration of nondischargeability of the approximately $102,000 balance alleged to still be owed. The two adversary proceedings have been consolidated.

Plaintiff's adversary complaint contains causes of action for (1) fraud/negligent misrepresentation as to Defendant McDonnell only; (2) cancellation of the note and deed of trust (all defendants) on the ground that McDonnell's failure to have Plaintiff sign an attorney's fee agreement violated Cal. Bus. & Prof. Code § 6148, and entitles Plaintiff to void the agreement but pay a reasonable fee to the attorney; (3) cancellation of the note and deed of trust (all defendants) on the ground that McDonnell failed to advise Plaintiff to seek independent counsel or provide any writing to Plaintiff that the transaction was fair and reasonable and fully disclosed in violation of Rule 3-300 of the California RPC; (4) cancellation of the note and deed of trust (all defendants) on the ground that McDonnell admitted in his state court collection complaint that the amount owing is $102,092 and not the $125,000 amount of the note and DOT; (5) declaratory relief

(all defendants) that Plaintiff does not owe anything to Defendants, and cancelling the note and DOT; and (6) injunctive relief (all defendants) enjoining the foreclosure sale.

Plaintiff requests compensatory and exemplary damages, as well as fees and costs under the attorney's fees provision in the deed of trust.[1]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered by the Court if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56, incorporated in bankruptcy via Fed. R. Bank. P. Rule 7056; Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 584-85 (1985). All inferences must be drawn against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587.

If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either submitting affirmative

---

[1] The caption of Plaintiff's complaint includes the notation "Jury Trial Demanded." However, Plaintiff has not filed a separate jury demand, as required under Fed. R. Civ. P. 38 (applicable in bankruptcy under Fed. R. Bankr. P. 9015).

evidence that negates an essential element of the nonmoving party's claim, or by demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 330-34 (1986). The burden then shifts to the non-moving party to show the existence of a genuine issue for trial. Id. at 331.

### III. ANALYSIS

#### A. Fraud - Statute of Limitations

McDonnell contends that any fraud claim is barred by the three-year statute of limitations of Cal. Civ. Pro. Code § 338(d), which provides that an action for fraud must be brought within three years of the time plaintiff learns of the fraud. Here, the alleged misrepresentations took place on March 5, 2007, while the instant complaint was not filed until August 13, 2013, over six years later. For purposes of this analysis, the Court assumes that Plaintiff could prove that McDonnell made misrepresentations.

Plaintiff contends there is an issue of fact as to when the fraud cause of action accrued because there is an issue of law and/or fact as to when Plaintiff sustained damages from McDonnell's alleged fraud. "When damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained." City of Vista v. Robert Thomas Securities, Inc., 84 Cal. App. 4th 882, 886 (2000). Plaintiff contends that the damage caused by McDonnell's breach of McDonnell's promise not to take Plaintiff's house did not occur until the holder of the Deed of Trust recorded a notice of default on November 27, 2012, less than one year prior to the filing of this adversary proceeding.

"Unless the plaintiff merely seeks to rescind the contract, it must suffer actual monetary loss to recover on a fraud claim." Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1240 (1995) (emphasis added; citations omitted). See also Walker v. Pacific Indemnity Co., 183 Cal. App. 2d 513, 517 (1960) ("[M]ere possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable.") Any manifest and palpable injury will commence the statutory period. Costa Serena Owners Coalition v. Costa Serena Architectural Committee, 175 Cal. App. 4th 1175, 1196 (2009) (citing Marin Healthcare Dist. v. Sutter Health, 103 Cal. App. 4th 861, 879 (2002)). See also Davies v. Krasna, 14 Cal. 3d 502, 514 (1975) ("The infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period."); and Spellis v. Lawn, 200 Cal. App. 3d 1075, 1080-81 (1988) (holding that not all damages resulting from an act are required to have occurred before a cause of action accrues: "the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.").

In Costa Serena, a coalition of homeowners in a planned unit development challenged an architectural committee's attempt to extend a declaration of restrictions and challenged the validity of amendments to the declaration of restrictions. The court held that the homeowners' cause of action accrued at the time the amendments were recorded, and not when the architectural committee attempted to rely on the amendments to extend the declaration of restrictions. The court held that the homeowners sustained a manifest and palpable injury at the time each of the amendments was

recorded. The court rejected the argument that the statute of limitations should be tolled because the homeowners had no interest in challenging the amendments until the architectural committee attempted to extend the declaration of restrictions.

McDonnell argues that under these authorities, the damage occurred at the time Plaintiff executed the Deed of Trust because at that point, Plaintiff could no longer access the equity in his home. However, the Court finds that Plaintiff did not sustain any damage at that time. Viewing the evidence in the light most favorable to Plaintiff, Plaintiff signed the Deed of Trust based on McDonnell's promise that McDonnell would not enforce the Deed of Trust. The parties formed a contract in which each side gave consideration. In return for signing the Deed of Trust, Plaintiff obtained McDonnell's promise not to enforce the Deed of Trust as well as McDonnell's assurance that he would continue to perform services.

Under contract law, no damage occurred until McDonnell in effect repudiated the parties' agreement by selling the Note and Deed of Trust to The Playforge, LLC in September 2010. See Taylor v. Johnston, 15 Cal. 3d 130, 137 (1975) (implied repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible). However, this is an action sounding in fraud, not contract. The statute of limitations for fraud "commences to run only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." Hobart v. Hobart Estate Co., 26 Cal. 2d 412, 437 (1945). "[T]he plaintiff discovers the cause of action when he at least

suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof – when, simply put, he at least suspects that someone has done something wrong to him, "wrong" being used, not in any technical sense, but rather in accordance with a lay understanding." Lyles v. State, 153 Cal. App. 4th 281, 286-87 (2007) (citations omitted). "An averment of lack of knowledge within the statutory period is not sufficient; a plaintiff must also show that he had no means of knowledge or notice which followed by inquiry would have shown the circumstances upon which the cause of action is founded." Mortimer v. Loynes, 74 Cal. App.2d 160, 168 (1946) (citations omitted).

Assuming for purposes of this analysis that the alleged misrepresentation was the promise not to enforce the Deed of Trust, the unrebutted evidence provided by McDonnell shows that Plaintiff knew, not later than October 9, 2009, that McDonnell might not intend to keep his promise when McDonnell sent Plaintiff an e-mail reiterating an intent to "call" the loan. That e-mail stated:

> As I told you last month, I have run out of money and out of credit. I have not been able to pay my son's tuition. I am 3 months behind in rent and other payments here at my office. That's why I told you I am calling the loan. I don't want to move against your house, but you are leaving me no choice.

Arguably, by this email Plaintiff was on notice that McDonnell did not consider himself bound by the promise not to enforce the Deed of Trust and thus was on notice of McDonnell's possible fraud. See Covell v. Gibson, 2007 WL 1748079, *3 (Cal. Ct. App. June 19, 2007) (holding that action for promissory fraud accrued when defendant which had promised not to charge interest demanded payment of interest from plaintiff, not when the interest amount was offset from payment owed to plaintiff by defendant). However,

viewing the evidence in the light most favorable to Plaintiff, the email could also have meant that McDonnell intended to keep his promise at the time it was made, but, more than two years later, was losing patience with Plaintiff's failure to pay. In other words, McDonnell's email did not necessarily put Plaintiff on notice of fraud but could also have been simply a threat by McDonnell to put pressure on Plaintiff to pay, or perhaps notice to Plaintiff that McDonnell had changed his mind and was now considering enforcing the Deed of Trust. The Court thus finds that there is an issue of fact as to when Plaintiff knew or should have known of possible fraud. Summary judgment on this claim is therefore denied.

**B. Cal. Bus. & Prof. Code § 6148**: In support of the Second Cause of Action for injunctive relief, the complaint alleges that the Note and Deed of Trust should be invalidated because there was no written fee agreement between Plaintiff and McDonnell. McDonnell concedes that no fee agreement was ever signed. However, the requirement of a written agreement does not apply if the attorney renders services in an emergency, or if the services being rendered are the same general kind as previously rendered to and paid for by the client. Arguably, the services provided by McDonnell fall into one of those categories, which might raise an issue of fact for trial. However, Cal. Bus. & Prof. Code § 6148 provides that even if the statute is violated, the attorney is entitled to collect a reasonable fee. <u>Mardirossian & Associates, Inc. v. Ersoff</u>, 153 Cal. App. 4th 257, 275 (2007). Section 6148(c) imposes no sanctions on an attorney who lacks a written fee

agreement, other than limiting the attorney to recovery of a reasonable attorney's fee. Flannery v. Prentice, 26 Cal. 4th 572, 579 (2001). Plaintiff has not alleged that the fees charged by McDonnell were not reasonable, nor has Plaintiff cited any authority that the Deed of Trust should be invalidated on the basis of noncompliance with § 6148, and the Court has not found any. Therefore, summary judgment is granted on this claim.

**C. Violations of Cal. RPC 3-300.**

In support of the Third Cause of Action for Injunctive Relief, Plaintiff alleges that McDonnell failed to comply with California Rule of Professional Conduct 3-300, which provides:

> A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied:
>
> (A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and
>
> (B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and
>
> (C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition.

Here, the unrebutted evidence is that McDonnell complied with these requirements: McDonnell sent an email on February 21, 2007 advising Plaintiff in writing of the potential conflict in any dealing between an attorney and client and advising Plaintiff that he should consult with an independent attorney on the matter; the Note signed by Plaintiff contains a paragraph certifying that this was done. See Hawk v. State Bar, 45 Cal. 3d 589, 601 (1988)

("Attorneys are no longer prohibited from acquiring interests adverse to their clients; rule [3-300] merely requires the attorney to fully explain such transactions, to offer only fair and reasonable terms, to give the client a copy of the agreement, and to give the client an opportunity to seek independent legal advice."). The Court will grant summary judgment on this claim.

Plaintiff's Fifth and Sixth causes of action for declaratory and injunctive relief are also dismissed, to they extent those claims are premised upon fraud or violations of Cal. RPC 3-300 and Cal. Bus. & Prof. Code § 6148.

### D. Judicial Admission of Amount Owed

The Fourth Cause of Action for declaratory and injunctive relief is based on an alleged judicial admission by McDonnell that the amount owed as of January 19, 2013 was $102,092.00. Plaintiff alleges that the Notice of Default reflecting a balance of $183,720.28 is "substantially erroneous, lacks evidentiary support, and cannot support any foreclosure sale of the property." Plaintiff prays for the Note and Deed of Trust to be canceled on that basis.

The Court requested that the issue be addressed in the supplemental briefing. McDonnell states in his supplemental brief that the $102,092 referred to in the state court is the amount owed by Plaintiff above and beyond the $125,000 represented by the Note. Even if the amount owed is less than the amount of the Note, this alone would not appear to provide a basis to invalidate the Note and Deed of Trust in their entirety. However, McDonnell did not include this cause of action in his motion for summary judgment.

Therefore, the Court will not grant summary judgment on this cause of action.

McDonnell argues for the first time in his supplemental brief that the Mackin Trust appears to be a bona fide purchaser. Further, McDonnell contends that even if the Mackin Trust is not a bona fide purchaser, Plaintiff's lawsuit may be barred by laches because the Mackin Trust had no notice of Plaintiff's claims and purchased the Note and Deed of Trust in reliance on there being no adverse claims. McDonnell contends that the Mackin Trust would be severely prejudiced if the Court allows Plaintiff to cancel the Note and Deed of Trust. It is not clear whether McDonnell expects the Court to make a ruling based on these arguments, or whether McDonnell has standing to raise this argument on behalf of the Mackin Trust. In any event, because McDonnell did not raise these issues in his initial motion, the Court need not rule on them. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).

## V. CONCLUSION

For the foregoing reasons, McDonnell's motion for summary judgment is granted with respect to the Second, and Third Causes of Action. The Fifth and Sixth Causes of Action for injunctive and declaratory relief are dismissed to the extent those claims are based on violations of Cal. RPC 3-300 and Cal. Bus. & Prof. Code § 6148. Summary judgment is denied with respect to the First Cause of Action for Fraud and the Fourth Cause of Action for Injunctive Relief. Defendant McDonnell may submit a proposed form of order

///

///

after serving a copy on counsel for Plaintiff, as required by Local Bankr. R. 9021-1(c).

**\*\*\* END OF MEMORANDUM DECISION \*\*\***

**Court Service List**

Parties to be served electronically.